UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HYOSUNG (AMERICA), INC. and NAUTILUS HYOSUNG INC., <br><br> Plaintiffs, <br><br> vs. <br><br> HANTLE USA, INC., <br><br> Defendant. | Case No:  C 10-02160 SBA <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Docket 14 |

Plaintiffs Hyosung (America), Inc. and Nautilus Hyosung Inc. (collectively "Plaintiffs," unless stated otherwise) previously obtained an arbitral judgment in excess of $5 million against Tranax Technologies, Inc. ("Tranax").  Tranax allegedly transferred its business assets to a sister entity, Defendant Hantle USA ("Hantle"), in order to avoid satisfying the judgment.  In its First Amended Complaint, Plaintiffs alleges causes of action under California's Uniform Fraudulent Transfer Act ("UFTA") against Hantle based on its role in the allegedly fraudulent transfer of assets by Tranax, which is now bankrupt.  The parties are presently before the Court on Hantle's Motion to Dismiss First Amended Complaint, which is brought pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 9(b).  Dkt. 14.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion in its entirety.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

Nautilus Hyosung is a Korean corporation that makes and sells Automated Teller Machines ("ATMs"). First Am. Compl. ("FAC") ¶ 5. Hyosung (America) is an affiliated company based in New York, which previously sold ATMs manufactured by Nautilus Hyosung to Tranax. Id. In turn, Tranax served as a distributor of the Nautilus Hyosung ATMs, pursuant to a distribution agreement between Tranax and Nautilus Hyosung. Id. In 2006, a dispute arose when Nautilus Hyosung learned that Tranax was selling a modified version of its ATM which utilized a part manufactured by Hantle. Pet. ¶ 13.[1] In August 2007, Nautilus Hyosung and Hyosung (America) commenced arbitration proceedings against Tranax in the International Centre for Dispute Resolution ("ICDR"), alleging, inter alia, claims for breach of contract and trademark infringement. Id. ¶ 14. A six-day arbitration hearing took place in Seoul during December 2008. Id. ¶ 17.

By January 22, 2010, Tranax and Hantle allegedly knew that an arbitration award was imminent, because Tranax had received notice on that date that the award had been submitted to the ICDR for review. FAC ¶ 14. A week later on January 29, 2010, Tranax announced that it "would stop selling ATMs in its own name and that its products [would] be marketed through the parent company, Handle USA.'" FAC ¶ 15. Tranax assured the public that although its products would now be sold by Hantle by stating that: "[T]he product line, the pricing and the personnel all remain in place to serve you as we have in the past." Id. Notably, Tranax entitled its announcement as, "A rose by any other name." Id. A few days later, Tranax confirmed on its website that it was assuming Tranax's ATM business. Id. ¶ 16. The website displayed an image of a Tranax ATM next to the headings,

---

[1] Factually, this case is related to Hyosung (Am.) Inc., et al., v. Tranax Tech., Inc., C 10-0793 VRW. For background purposes only, the Court includes certain facts taken from the Petition to Confirm Arbitral Award for Entry of Judgment. Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n. 2 (9th Cir. 2002) (noting that a federal court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (citation omitted). References to that Petition will be denoted by "Pet."

"'A rose by any other name,' 'New name,' 'Same faces,' and 'Same Established Product Line.'"  Id.  There was no business agreement and apparently no compensation paid by Hantle to Tranax as consideration for the transfer of its business.  Id. ¶ 17.

On March 31, 2010, Tranax's counsel and Chief Executive Officer allegedly stated to the media that "some of its prior statements concerning the transfer of Tranax's ATM business to Hantle were not correct."  Id. ¶ 19.  However, they confirmed that Tranax had transitioned out of the retail ATM business, effective February 1, 2010, and that Hantle would service ATMs previously sold by Tranax and would "pursue the retail ATM market going forward" in Tranax's stead.  Id.

On February 9, 2010, the ICDR issued an arbitration award in favor of Plaintiffs and ordered Tranax to make an "immediate payment" of $3 million, plus substantial interest, for the Nautilus Hyosung ATMs.  Id.  After Tranax failed to make the required payment, Plaintiffs filed a Petition to Confirm Arbitration Award in this Court on February 24, 2010.  See Hyosung (Am.) Inc., et al., v. Tranax Tech., Inc., C 10-0793 VRW.  Id. ¶ 11.  On May 6, 2010, Judge Vaughn Walker, the district judge assigned to the matter, issued an order confirming the arbitration award and entered judgment against Tranax in the amount of $5,015,363.09, plus interest.  Id. ¶ 13.  On June 11, 2010, Tranax filed a voluntary petition under Chapter 7 of the Bankruptcy Code, see In re Tranax Tech., Inc., No. 10-46683 RN 7 (N.D. Cal. Bkrtcy. Ct.).  Id. ¶ 6.

### B. PROCEDURAL HISTORY

In the meantime, on May 19, 2010, Plaintiffs filed a Complaint for Avoidance and Recovery of Fraudulent Conveyance of Related Claims against Hantle.  Dkt. 1.  Although the case was assigned to Magistrate Judge Bernard Zimmerman, Judge Walker issued an order on June 10, 2010, relating the instant case to C 10-0793 VRW.  Dkt. 9.

On June 16, 2010, Hantle filed a motion to dismiss.  Dkt. 10.  In response, Plaintiffs filed a First Amended Complaint for Avoidance and Recovery of Fraudulent Conveyance of Related Claims ("FAC") on July 17, 2010.  Dkt. 13.  Like the initial Complaint, the crux of the FAC is that Hantle and Tranax engaged in a fraudulent scheme to prevent Plaintiffs

1 from enforcing their arbitral award by intentionally shifting Tranax's assets to Hantle.  The
2 FAC alleges five state law causes of action for:  (1) Avoidance and Recovery of Intentional
3 Fraudulent Transfer, Cal. Civ. Code § 3439.04(a)(1); (2) Avoidance and Recovery of
4 Intentional Fraudulent Transfer as to Plaintiffs, Cal. Civ. Code § 3439.04(a)(1) & 3439.05;
5 (3) Common Law Fraudulent Conveyance; (4) Civil Conspiracy; and (5) Aiding and
6 Abetting.[2]

7 On July 21, 2010, Hantle renewed its motion to dismiss.  Dkt. 14.  Hantle contends,
8 as an initial matter, that Plaintiffs lack standing based on the theory that some of the claims
9 alleged belong to the Tranax estate, and thus, may only be asserted by its trustee.
10 Alternatively, Hantle contends that Plaintiffs have failed to plead fraud with the requisite
11 particularity under Rule 9(b) and their claims otherwise are insufficiently pled under Rule
12 12(b)(6).[3]  Subsequent to the close of briefing on the motion, Plaintiffs submitted a request
13 for the Court to take judicial notice of the fact that Plaintiffs and the trustee in the Tranax
14 bankruptcy entered into a "Settlement and Claims Purchase Agreement," which transfers
15 ownership any "right, title, and interest in and to any claims, causes of action, demands or
16 other rights relating to or arising out of the prepetition fraudulent transfer of Tranax assets
17 to Hantle USA, Inc…."  Pls.' Request for Judicial Notice, Ex. A, Dkt. 29-1.  According to
18 Plaintiffs, this agreement disposes of Hantle's arguments regarding Plaintiffs' standing.
19 Hantle filed a response to Plaintiffs' request for judicial notice.  Dkt. 35.  At the direction of
20 the Court, Plaintiffs submitted a reply in support of its request for judicial notice.  Dkt. 41.

---

[2] The parties' Supplemental Joint Case Management Statement, filed February 18, 2011, indicates that Plaintiffs intend to file a Second Amended Complaint joining additional parties.  Supp. Jt. Case Mgt. Stmt. at 1, Dkt. 45.  Hantle has indicated that it will not oppose the filing of a Second Amended Complaint in the event the Court denies its motion to dismiss, subject to the resolution of an unspecified "privilege" issue.  Id.

[3] On November 5, 2010, after the motion had been fully briefed but not yet ruled upon, Judge Walker recused himself from the action.  The action was reassigned to this Court on November 8, 2010.

**II.     LEGAL STANDARD**

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).[4]  To survive a motion to dismiss for failure to state a claim based on deficient pleading, a complaint must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir.2010) (quoting Iqbal, 129 S.Ct. at 1949) (internal quotation marks omitted).  When the facts alleged do not nudge a plaintiff's claim "across the line from conceivable to plausible," the court should dismiss the complaint.  See Twombly, 550 U.S. at 570.

Fraud claims and claims that "sound in fraud" or that are "grounded in fraud" must satisfy the heightened pleading requirements of Rule 9(b), which provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  This means that the complaint must allege "the who, what,

---

[4] The question of whether Hyosung has standing presents a question of prudential standing rather than constitutional standing under Article III.  See Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir. 2004).  While Article III standing may be raised in a Rule 12(b)(1) motion, questions of prudential standing must be raised in a Rule 12(b)(6) motion. See Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174-75 (9th Cir. 2004).  Hantle's motion, insofar as it challenges Plaintiffs' standing, will therefore be construed under Rule 12(b)(6).

when, where, and how" of the alleged fraudulent conduct, Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); see Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995).

## III. DISCUSSION

### A. STANDING

Standing must be present before the Court addresses the merits of any claim. Moreland v. Las Vegas Metropolitan Police Dept., 159 F.3d 365, 369 (9th Cir. 1998) ("Because the question of whether a particular party has standing to pursue a claim naturally precedes the question of whether that party has successfully stated a claim, address this question first."). The party seeking relief "bears the burden of showing that he has standing for each type of relief sought." Summers v. Earth Island Inst., 129 S.Ct. 1142, 1149 (2009). "Standing is determined as of the commencement of litigation." Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1170 (9th Cir. 2002).

Hantle does not dispute that Plaintiffs *currently* have standing to bring all claims asserted in its amended complaint. Rather, it contends that Plaintiffs lacked standing when they commenced this action. While acknowledging the substantive import of Plaintiffs' agreement with the trustee, Hantle asserts that Plaintiffs are "now asserting *different claims* that the ones asserted at the outset of the litigation." Def.'s Resp. to RJN at 2 (emphasis added). In particular, Hantle posits that the claims transferred to Plaintiffs by the trustee *belonged to Tranax*, and therefore, Plaintiffs had no right to bring them at the outset of the litigation. The flaw in Hantle's standing analysis is that it ignores that Plaintiffs commenced the instant litigation *before* Tranax filed for bankruptcy. A fraudulent transfer claim that accrues prior to the filing of a bankruptcy petition belongs to the creditor, not the debtor. See Mejia v. Reed, 31 Cal.4th 657, 663 (2003) (noting that the UFTA "permits *defrauded creditors* to reach property in the hands of a transferee.") (emphasis added); In re Kimmel, 367 B.R. 174, 175 n.5 (Bkrtcy. N.D. Cal. 2007) ("The right to maintain a UFTA action *belongs to individual creditors prior to bankruptcy*.") (emphasis added). Plaintiffs

- 6 -

therefore had standing at the outset of the litigation to bring its fraudulent transfer claims against Hantle.

After Tranax filed for bankruptcy, Plaintiffs no longer had the power to assert its fraudulent claims *directly*. Rather, under 11 U.S.C. § 544(b), such power passed to the trustee "as the representative of all creditors." In re Kimmel, 367 B.R. at 175 n.5 (citing In re MortgageAm. Corp., 714 F.2d 1266, 1275-78 (5th Cir. 1983)); Kupetz v. Wolf, 845 F.2d 842, 845 (9th Cir. 1988) ("Section 544(b) of the Bankruptcy Code permits the Trustee to stand in the shoes of a creditor to assert any state law claims that *a creditor* may have.") (emphasis added). In other words, Plaintiffs' fraudulent transfer claims were not "owned" by either Tranax bankruptcy estate or its trustee. Rather, the bankruptcy filing merely vested the trustee with the *exclusive authority* to pursue those claims on behalf of Tranax's creditors. Since Plaintiffs have entered into an agreement with the trustee, however, Plaintiffs now have full authority to proceed with their fraudulent transfer claims, which they owned in the first instance. Thus, the Court finds that Plaintiffs have proper standing to pursue the instant action. The Court now turns to the merits of Hantle's motion to dismiss.

**B.   SUFFICIENCY OF THE PLEADINGS**

**1.   Actual Fraudulent Transfer under Cal. Civ. Code § 3439.04(a)(1)**

A fraudulent conveyance is "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." Yaesu Elecs. Corp. v. Tamura, 28 Cal.App.4th 8, 13 (1994). To protect creditors from unseemly debtors, the UFTA provides that a transfer may be deemed invalid if a debtor transfers property with the "actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ.Code § 3439.04(a)(1). Rule 9(b) applies to a fraudulent conveyance claim brought under § 3439.04(a)(1). See Kennedy Funding, Inc. v. Chapman, No. C 09-01957 RS, 2010 WL 2528729, at *9 (N.D. Cal. June 18, 2010) (Seeborg, J.).

Hantle argues that Plaintiffs' first claim under § 3439.04(a)(1) fails to comport with Rule 9(b)'s particularity requirements on the ground that it fails to sufficiently identify the

1  "property" that was fraudulently transferred by Tranax to Hantle. Def.'s Mot. at 8-10.
2  However, Plaintiffs have alleged, in sufficient detail, that Tranax fraudulently transferred
3  virtually its entire business operation to Hantle for the purpose of rendering itself judgment-
4  proof.  See FAC ¶¶ 14-22.  Although there is no authority directly addressing the issue
5  with respect to California's UFTA, the Ninth Circuit, in interpreting analogous provisions
6  of the Bankruptcy Code, has recognized that the transfer of an ongoing business concern
7  can constitute a fraudulent transfer.  See Stoumbus v. Kilimnik, 988 F.2d 949, 963-64 (9th
8  Cir. 1993) (holding that the transfer of a company's good-will or "going concern value"
9  could support a fraudulent transfer claim) (citing Freehling v. Nielson (In re F & C Servs.,
10 Inc.), 44 B.R. 863, 870-71 (Bankr. S.D. Fla. 1984)).[5]

11       Despite Hantle's arguments to the contrary, the pleadings in this case clearly identify
12 the conduct and the "property" that is the subject matter of Plaintiffs' fraudulent transfer
13 claim.  The amended complaint alleges that on January 29, 2010, allegedly in anticipation
14 of the forthcoming arbitral award, Tranax announced that it was no longer selling ATMs
15 under its name and that its products would be sold through its parent entity, Hantle.  FAC
16 ¶ 15.  Tranax titled this announcement as "A rose by any other name," implying that
17 Tranax's business would thereafter be transferred and conducted by Hantle. Id.  To assure
18 its customers that the change in business was in name only, Tranax informed the public that
19 "'the product line, the pricing, and the personnel [would] all remain in place to serve you as
20 we have in the past.'" Id.  The amended complaint further alleges that a few days later,
21 Hantle confirmed on its website that it was taking over Tranax's ATM business. Id. ¶ 16.
22 The website displayed an image of a Tranax ATM next to the headings, "'A rose by any
23 other name,' 'New name,' 'Same faces,' and 'Same Established Product Line.'" Id.

---

[5] Hantle attempts to distinguish Stoumbos and In re F & C Servs. on the basis that they "involved the complete shifting of one company's business to another without any change in the name or location." Def.'s Reply at 8.  This argument misses the mark.  Both courts focused on the fact that the transfer in business operations occurred in form, not substance—which is precisely what Plaintiffs are alleging transpired in this case.

The allegations summarized above make it clear that the "property" transferred by Tranax to Hantle was its business of selling and marketing ATM machines. Plaintiffs have thus alleged sufficient facts to afford Hantle notice of the allegedly fraudulent conduct that forms the basis of Plaintiffs' fraudulent transfer claims. See Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995) ("The purpose of this rule [i.e., Rule 9(b)] is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations."). Hantle's motion to dismiss Plaintiffs' first claim is DENIED.

### 2. Constructive Fraudulent Transfer under Cal. Civ. Code §§ 3439.04(a)(2) and 3439.05

Plaintiffs' second claim is for constructive fraudulent transfer under the UFTA, Cal. Civ. Code §§ 3439.04(a)(2) & 3439.05. FAC ¶¶ 32-35. Section 3439.04(a)(2) provides that a transfer is fraudulent if the debtor made the transfer or incurred the obligation:

> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

California Civil Code § 3439.05 provides:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Claims for actual fraudulent transfer and constructive fraudulent transfer "may be asserted as alternative theories of liability…." Liberty Mut. Ins. Co. v. Hoge, Nos. C 03-02502 WHA, C 02-02171 & WHA, 2005 WL 756568, at *4 (N.D. Cal. April 1, 2005) (Alsup, J.); see also Mejia v. Reed, 31 Cal.4th 657, 664 (2003) ("Even without actual fraudulent intent, a transfer may be fraudulent as to present creditors if the debtor did not receive 'a

reasonably equivalent value in exchange for the transfer' and 'the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.'").

Hantle contends that claims for constructive fraudulent transfers under the UFTA are subject to Rule 9(b). However, as the district court succinctly explained in Sunnyside Devel. Co. LLC v. Cambridge Display Tech. Ltd., No. C 08-1780 MHP, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008):

> [T]he cause of action for constructive fraudulent conveyance does not include an element of fraud. See Cal. Civ.Code § 3439.05. Its label notwithstanding, an alleged violation of section 3439.05 does not "sound in fraud," because the claim focuses entirely on the transaction at issue and does not include elements of knowledge, intent, or purpose.

Sunnyside Devel. Co. LLC v. Cambridge Display Tech. Ltd., No. C 08-1780 MHP, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008); Liberty Mut. Ins. Co., 2005 WL 756568, at *4 (noting that the "key distinction" between an actual fraudulent transfer claim and a constructive fraudulent transfer claim "is that the former requires an inquiry into the debtor's intent while the latter requires a calculation of insolvency.").[6] Hantle's motion to dismiss Plaintiffs' second claim for relief is DENIED.

### 3. Common Law Fraudulent Conveyance

Plaintiffs' third claim for relief is common law fraudulent conveyance. FAC ¶¶ 36-39. Hantle moves for dismissal of this claim on the ground that Plaintiffs have not properly alleged the elements of a fraud claim. Def.'s Mot. at 10.[7] However, Plaintiffs are alleging a cause of action common law fraudulent conveyance, *not* for common law fraud. Moreover, the elements for a fraudulent transfer claim under common law or the UFTA, Cal. Civ. Code § 3934.04(a)(1), are the same. See Arluk Med. Ctr. Indus. Group, Inc. v.

---

[6] Even where courts have applied Rule 9(b) to constructive fraudulent transfer claims, they have only required the pleader to provide "a description of the events surrounding the [the fraudulent transfer]....." E.g., Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997). As set forth above, the amended complaint provides such information.

[7] The elements of a fraud claim are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. Kearns, 567 F.3d at 1126.

- 10 -

Dobler, 116 Cal.App.4th 1324, 1340 (2004). Hantle's motion to dismiss Plaintiffs' third claim is therefore DENIED.

### 4. Civil Conspiracy

Plaintiffs' fourth claim alleges that Hantle conspired with Tranax to fraudulently transfer Tranax's ATM Business. FAC ¶ 41. Hantle argues that Plaintiffs' civil conspiracy claim must be dismissed because it is not an independent cause of action. Def.'s Mot. at 10. Under California law, "[a] civil conspiracy, however atrocious, does not give rise to a cause of action *unless* a civil wrong has been committed resulting in damage." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510-511 (1994) (internal quotations omitted, emphasis added)). "A complaint for civil conspiracy states a cause of action only when it alleges the commission of a civil wrong that causes damage." Okun v. Superior Court, 29 Cal.3d 442, 454 (1981). Here, the Court has found that Plaintiffs have adequately alleged claims for common law and statutory fraudulent transfer. As a result, Plaintiffs may properly maintain a claim for civil conspiracy. See Filip v. Bucurenciu, 129 Cal.App.4th 825, 837 (2005) (holding that fraudulent transfer claim under the UFTA could support a cause of action for conspiracy). Therefore, Hantle's motion to dismiss Plaintiffs' fourth claim for civil conspiracy is DENIED.

### 5. Aiding and Abetting

Plaintiffs' fourth claim for aiding and abetting alleges that Hantle provided substantial assistance to Tranax to facilitate the fraudulent transfer of its business to Hantle. FAC ¶ 45. "Liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Casey v. United States Bank Nat. Ass'n (2005) 127 Cal.App.4th 1138, 1144 (2005) (internal quotation marks and citations omitted, ellipses in orig.).

Plaintiffs allege that Hantle was "aware of" and provided "substantial assistance" in furtherance of Tranax's scheme to "hinder, delay and defraud [Plaintiffs]…." FAC ¶¶ 28-29. Hantle contends, without citing any relevant legal authority, that Plaintiffs' allegations of actual knowledge are not supported by specific facts showing scienter. Def.'s Mot. at 12. To properly plead scienter, a plaintiff need only allege facts that "give rise to the inference" that the defendant knew that the other's conduct was tortious. See Cooper v. Pickett, 137 F.3d 616, 628 (9th Cir. 1997). The facts set forth in the amended complaint are sufficient to give rise to such an inference. Plaintiffs allege that Hantle and Tranax are owned by the same parent entity and are operated by the same individual. FAC ¶ 5. Aware that an arbitral award was forthcoming, Hantle allegedly began a coordinated effort with Tranax to obtain its assets in order to avoid the consequences of an adverse decision in the arbitration proceeding. Id. ¶¶ 14-22. This purported scheme appears to have been successful, as Tranax filed for bankruptcy shortly after Judge Walker granted Plaintiffs' petition to confirm the arbitration award against Tranax. Id. ¶¶ 6, 13. Taken together, these and the other facts alleged in the pleadings are more than sufficient to provide the requisite scienter to support Plaintiffs' claim for aiding and abetting. Hantle's motion to dismiss Plaintiffs' fifth cause of action is DENIED.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss is DENIED. Defendant shall file its answer within fourteen (14) days of the date this Order is filed.

2. The Case Management Conference scheduled for March 1, 2011 is CONTINUED to **May 25, 2011 at 3:30 p.m.** Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement. The joint statement shall be filed no later than ten (10) days prior to the conference and shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiffs shall be responsible

1 for filing the statement as well as for arranging the conference call. All parties shall be on
2 the line and shall call (510) 637-3559 at the above indicated date and time.
3   3. The parties shall meet and confer in an effort to reach an agreement
4 concerning the filing of Plaintiffs' proposed Second Amended Complaint. Within ten (10)
5 days of the date this order is filed, Plaintiffs shall either file a stipulation and proposed
6 order for the filing of a Second Amended Complaint, or alternatively, a motion for leave to
7 file a Second Amended Complaint in the event the parties are unable to enter into such a
8 stipulation.
9   4. This Order terminates Docket 14.
10 IT IS SO ORDERED.
11 Dated: March 4, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge