1   ADAM A. LEWIS (CA SBN 88736)
    (alewis@mofo.com)
2   GRANT L. KIM (Cal. Bar No. 114989)
    (gkim@mofo.com)
3   ALISON M. TUCHER (Cal. Bar No. 171363)
    (atucher@mofo.com)
4   BARBARA N. BARATH (Cal. Bar No. 268146)
    (bbarath@mofo.com)
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone: 415.268.7000
7   Facsimile: 415.268.7522

8   Attorneys for Plaintiffs

9
                        UNITED STATES DISTRICT COURT
10
                      NORTHERN DISTRICT OF CALIFORNIA
11

12
    HYOSUNG (AMERICA), INC. and NAUTILUS        Case No.    CV-10-2160-SBA
13  HYOSUNG INC.,

14              Plaintiffs,

15       v.                                     SECOND AMENDED COMPLAINT
                                                FOR AVOIDANCE AND
16  HANTLE, INC. (fka Hantle USA, Inc.),        RECOVERY OF FRAUDULENT
    GENMEGA, INC. (fka Huin, Inc.),             CONVEYANCE AND RELATED
17  WON GEE LEE, and MYUNG WON SUH,             CLAIMS

18              Defendants.

19

20      For their complaint herein, Plaintiffs Hyosung (America), Inc. ("Hyosung America"), and

21  Nautilus Hyosung Inc. ("Nautilus Hyosung" or "Hyosung") hereby allege as follows:

22                              **INTRODUCTION**

23      1.      This complaint arises out of a fraudulent scheme by Defendants and Tranax

24  Technologies, Inc. ("Tranax") to prevent Plaintiffs from enforcing valid claims against Tranax.

25  These claims have been upheld by an arbitral award, a court judgment, and most recently, an order

26  of the U.S. Bankruptcy Court of the Northern District of California that allowed Plaintiffs' claims

27  against Tranax in the amount of $15 million (the "Recognized Claims").

28

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA                                                                    1

1      2.      The essence of this scheme is that Defendant Won Gee Lee ("Defendant Lee") and

2   Defendant Myung Won ("Michael") Suh ("Defendant Suh") caused Tranax to dissipate its

3   primary assets by transferring them to two related companies, Defendants Hantle, Inc. ("Hantle")

4   and Genmega, Inc. ("Genmega"), without receiving reasonably equivalent compensation.  After

5   Tranax had dissipated its primary assets and had transferred many of its employees to Hantle and

6   Genmega, Defendants Lee and Suh caused Tranax to pay its debts to related corporations (but not

7   Plaintiffs), cease business operations, and then file a bankruptcy petition, leaving a shell that lacks

8   sufficient assets to pay its debts to Plaintiffs.  Defendants Lee, Suh, Hantle, and Genmega

9   (collectively, "Defendants"), and Tranax engaged in this scheme for the purpose of frustrating

10  Plaintiffs' efforts to enforce their Recognized Claims, while at the same time unjustly enriching

11  all of the Defendants.

12     3.      As a result of this scheme, Hantle has been selling the same automated teller

13  machines ("ATMs") previously sold by Tranax to the same customers, using many of the same

14  employees who previously worked for Tranax.  Hantle has thus become a successor-in-interest to

15  Tranax's ATM business.

16     4.      Genmega assisted with this fraudulent "shell game" by receiving money, ATM

17  products, and other assets from Tranax without paying reasonably equivalent compensation; by

18  redirecting many of those assets to Hantle; and by using Tranax's goodwill and established

19  relationships with customers and suppliers to sell ATMs based on Tranax ATMs to Tranax's

20  former customers.

21                                          **PARTIES**

22     5.      Plaintiff Nautilus Hyosung is a Korean corporation with its principal place of

23  business in Seoul, Republic of Korea.  Nautilus Hyosung is a leading manufacturer of ATMs,

24  which it sells in the United States, Canada, and many other countries around the world.

25     6.      Plaintiff Hyosung America is a New York corporation with its principal place of

26  business in New York, New York.  Until late 2006, Hyosung America resold ATMs that it

27  purchased from Nautilus Hyosung to Tranax, who at that time was Nautilus Hyosung's North

28  American distributor of ATMs.

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA                                                          2

1          7.          On information and belief, Defendant Hantle, Inc. is a California corporation with

2    its principal place of business in Fremont, California, which is in the business of selling ATMs.

3    Hantle was incorporated in August 2009 under the name Hantle USA, Inc. but changed its name

4    to Hantle, Inc. in July 2010.  Hantle is a sister company of Tranax, both of which are owned by a

5    Korean holding company called Eltna, Co., Ltd. ("Eltna").  Hantle initially had the same president

6    and CFO as Tranax (Defendants Lee and Suh respectively), the same controller (Eddie Liu), and

7    the same address.

8          8.          On information and belief, Defendant Genmega, Inc. is a California corporation

9    that is also in the ATM business, based in Fremont, California.  Genmega was incorporated in

10   January 2009 under the name of Huin, Inc., but changed its name to Genmega, Inc. in June 2010.

11   Genmega is a subsidiary of Hanmega Co., Ltd. ("Hanmega"), a Korean corporation that has

12   supplied ATM products to Tranax, Hantle, and Genmega.  At the time of Genmega's

13   incorporation, Hanmega was 30% owned by Eltna.

14         9.          On information and belief, Defendant Won Gee Lee is a California resident

15   domiciled in this District, a citizen of the Republic of Korea, and the largest shareholder of Eltna,

16   the parent company of both Tranax and Hantle.  Defendant Lee has served as the President of

17   Hantle, Tranax, and Eltna, and as a Director of Tranax and Eltna.

18         10.         On information and belief, Defendant Myung Won Suh, is a California resident

19   domiciled in this District, a citizen of the Republic of Korea, and another major shareholder of

20   Eltna.  Defendant Suh has served as the CFO of Hantle, Tranax, and Genmega; as Secretary for

21   Hantle; as Secretary and Registered Agent for Hantle and Genmega; and as a Director of Tranax

22   and Eltna.

23         11.         On information and belief, Tranax, Hantle, and Genmega are directly and indirectly

24   related.  For example, Genmega was incorporated in January 2009 by Eddie Liu, who also

25   incorporated Hantle and has served as Controller of Tranax, Hantle, and Genmega, as well as

26   Registered Agent for Genmega.  Genmega and Hantle share a building in Fremont, which was

27   originally intended to house Tranax, appear to share the same warehouse, and have adjacent

28   physical addresses that have recently been switched: while Hantle's original address was 49066

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA                                                                                          3

1   Milmont Drive and Genmega's original address was 49070 Milmont Drive, corporate records and

2   the companies' websites indicate that the addresses have reversed since late 2010.  In addition, the

3   current President of Genmega, Chan Goo Kang, previously served as the President of Hantle and

4   also as Product Manager and as Director of Operations and Development for Tranax.

5          12.   On information and belief, Defendants Lee and Suh controlled Tranax, Hantle, and

6   Genmega with regard to the scheme that is the subject of this complaint.  Defendants Lee and Suh

7   collectively owned a majority of the shares of Eltna, which in turn owned and controlled Hantle

8   and Tranax before it filed for bankruptcy.  At that time, Defendants Lee and Suh were Tranax's

9   President and CFO respectively, and members of Tranax's Board of Directors.  They also served,

10   respectively, as the first President and CFO of Hantle.  Eltna, the Korean holding company

11   controlled by Defendants Lee and Suh, previously owned a substantial equity stake in Genmega's

12   parent, Hanmega, until around August 2009.  In addition, Defendant Suh initially served as

13   Genmega's CFO, Secretary, and Registered Agent.

14          13.   Defendants Lee and Suh used their control over Tranax, Hantle, Genmega, and

15   other related companies and individuals to orchestrate the fraudulent dissipation and transfer of

16   Tranax's assets by directing, ordering, authorizing, and participating in the wrongful conduct

17   described herein for their own individual advantage.

18          14.   Plaintiffs allege on information and belief that, at all times relevant to the

19   dissipation, hiding, and transfers of assets alleged in this complaint, Defendants agreed to act, and

20   in fact acted, in concert with each other and as each other's agents and with Tranax for the

21   purpose of causing injury and damage to Plaintiffs as alleged herein.  Plaintiffs further allege on

22   information and belief that Tranax, Hantle and Genmega shared (and Hantle and Genmega

23   continue to share) various persons in direct or indirect ownership, management and control.

24   **JURISDICTION AND VENUE**

25          15.   The Court has jurisdiction of this action under 28 U.S.C. § 1332(a)(3), in that the

26   amount in controversy is more than $75,000, and this action is between citizens of different States

27   in which citizens or subjects of a foreign state are additional parties.  Plaintiff Hyosung America is

28   a citizen of New York; Defendants Hantle and Genmega are citizens of a different State,

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA

4

1    California; Defendants Lee and Suh are either aliens admitted for permanent residence in the

2    United States who are domiciled in California (and thus deemed to be citizens of California) or are

3    citizens of a foreign state; and Plaintiff Nautilus Hyosung is a citizen of a foreign state.

4         16.    Venue of this action in this District is proper under 28 U.S.C. § 1391(a), in that

5    Hantle and Genmega are California corporations having their principal places of business in this

6    District.  Defendants Lee and Suh reside in this District, and many of the events giving rise to the

7    claims asserted herein took place in this District.

8                           **GENERAL ALLEGATIONS**

9         **A.    The Partial Arbitral Award and Court Enforcement Proceedings**

10        17.    In August 2007, Plaintiffs filed an arbitration with the International Centre for

11   Dispute Resolution of the American Arbitration Association ("ICDR") against Tranax, the former

12   North American distributor of ATMs made by Nautilus Hyosung and sold to Tranax by Hyosung

13   America.  Plaintiffs claimed that Tranax had unpaid bills of more than $3 million for ATMs that

14   Tranax had ordered and received but for which it had refused to pay.  Plaintiffs further claimed

15   that Tranax had breached the parties' distribution contract in numerous other respects and had

16   infringed Plaintiffs' trademarks, resulting in the premature termination of the distribution contract

17   and millions of dollars in additional damages.

18        18.    In December 2008, a "Phase 1" merits hearing was held on liability as to all claims

19   and counterclaims, which also addressed damages on Plaintiffs' claim for unpaid bills (but not on

20   other claims).  A decision was initially expected by the summer of 2009, but this was postponed

21   several times.  On January 22, 2010, the parties were notified that the draft Phase 1 award had

22   been submitted to the ICDR for review.

23        19.    On February 9, 2010, the ICDR issued a Partial Award on Liability (the "Partial

24   Arbitral Award"), which concluded that Tranax had breached its distribution contract in numerous

25   respects.  The Partial Arbitral Award required Tranax to make "immediate payment" of more than

26   $3 million plus substantial interest for the unpaid bills.  The Partial Arbitral Award found that

27   Tranax was also liable on numerous other claims, with the amount of damages to be determined in

28   a second phase of the arbitration.

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA                                                      5

1        20.     Tranax failed to make the payment required by the Partial Arbitral Award, despite

2   Plaintiffs' demand for payment.  Accordingly, on February 24, 2010, Plaintiffs filed a Petition to

3   Confirm the Partial Arbitral Award in this Court, which was assigned to Chief Judge Vaughn R.

4   Walker as *Hyosung (America), Inc. et al. v. Tranax Technologies, Inc.*, CV 10-00793 VRW.  On

5   May 6, 2010, Judge Walker issued an order confirming the Partial Arbitral Award and directing

6   the Clerk to enter judgment against Tranax and in favor of Plaintiffs in the amount of

7   $5,015,363.09, with additional interest accruing at the rate of $1,742.52 per day until payment was

8   made.  Judgment in this amount was entered in favor of Plaintiffs on May 25, 2010.

9        21.     On June 11, 2010, Tranax filed a voluntary petition under Chapter 7 of the Title

10   VII of the United States Code, thereby commencing *In re Tranax Technologies, Inc.*, United

11   States Bankruptcy Court, Northern District of California, Case No. 10-46683 RN 7 ("Tranax

12   Bankruptcy").  Lois Brady was duly appointed and is serving as the chapter 7 trustee ("Trustee")

13   in the Tranax Bankruptcy.

14        22.     Plaintiffs filed their original complaint against Hantle in this action on May 19,

15   2010, before Tranax filed its bankruptcy petition.  Plaintiffs filed an amended complaint on July 7,

16   2010, notifying the Court of the Tranax Bankruptcy.  In response to Plaintiffs' amended

17   complaint, Hantle argued that the filing of the Tranax Bankruptcy had transferred control of all of

18   the claims asserted by Plaintiffs to the Trustee by operation of law.  Plaintiffs contended that they

19   retained ownership of at least some of the claims.  However, to moot Hantle's alleged objection

20   and to simplify the proceedings, Plaintiffs entered into a Settlement and Claim Purchase

21   Agreement with the Trustee, on September 24, 2010, which provided that the Trustee "hereby

22   sells, transfers, assigns and abandons to the Hyosung Creditors" . . . [a]ll of the Trustee's right,

23   title, and interest in and to any claims, causes of action, demands or other rights relating to or

24   arising out of the prepetition fraudulent transfer of any Tranax assets to Hantle USA, Inc. …

25   and/or other related entitles or individuals, including without limitation, … Huin, Inc. (aka

26   Genmega) … Won Gee Lee, [and] Myung Won ("Michael") Suh…."  In consideration of this

27   transfer, Plaintiffs agreed that any net recovery from their pursuit of fraudulent transfer claims

28

**SECOND AMENDED COMPLAINT**
Case No. CV-10-2160-SBA

6

1    would be provided to the Tranax bankruptcy estate for distribution to creditors, on the terms

2    specified in the Settlement and Claim Purchase Agreement.

3         23.    As part of the Settlement and Claim Purchase Agreement, the Trustee agreed that

4    Plaintiffs shall have an allowed claim of $15 million against Tranax, net of any claims that Tranax

5    may have against Plaintiffs.  This allowed claim took into account Plaintiffs' other pending claims

6    in the arbitration as to which Plaintiffs had already prevailed on liability (in addition to Plaintiffs'

7    court judgment for more than $5 million), as set forth in a Proof of Claim that Plaintiffs had filed

8    in the Tranax Bankruptcy for a total amount of more than $17.9 million.

9         24.    On November 4, 2010, the Bankruptcy Court entered an Order Approving

10   Settlement and Sale of Claims, which approved the Trustee's transfer and abandonment of claims

11   to Plaintiffs on the terms set forth in the Settlement and Claim Purchase Agreement.  The

12   Bankruptcy Court also approved allowance of Plaintiffs' claim of $15 million against Tranax, net

13   of any claims that Tranax may have against Plaintiffs.

14        **B.    The Fraudulent Transfer of Tranax's Business to Hantle and Genmega**

15        25.    On information and belief, Tranax and its principals (including Defendants Lee and

16   Suh) knew that there was a substantial likelihood that the Tranax Arbitration would result in an

17   award requiring Tranax to make substantial payments to Plaintiffs.  Accordingly, following the

18   merits hearing in the Tranax Arbitration in December 2008, Tranax and Defendants Lee and Suh

19   made preparations to shift Tranax's primary assets to related companies, so as to make it difficult

20   for Plaintiffs to attach those assets.

21        26.    On information and belief, Defendants Lee and Suh directed Tranax's Controller,

22   Eddie Liu, to incorporate Genmega in January 2009.  Genmega was a shell company that did not

23   generate significant revenues or conduct significant business activities until many months after its

24   incorporation.  Before June 2010, Genmega did not have a website, and it does not appear to have

25   made significant sales to third parties (excluding related companies such as Tranax and Hantle)

26   before late 2010.

27

28

**SECOND AMENDED COMPLAINT**
Case No. CV-10-2160-SBA

1    27.    On information and belief, Defendants Lee and Suh caused Eddie Liu to

2    incorporate Hantle in August 2009, as a wholly-owned subsidiary of Eltna.  Hantle was a shell

3    company that did not conduct significant business activities until a number of months later.

4    28.    On information and belief, Tranax, Hantle, Genmega and their principals

5    conducted a number of transactions in the last several months of 2009 and early 2010 involving

6    transfers of assets among these three companies and other related companies, as further described

7    below.

8    29.    On information and belief, Tranax and Defendants knew by no later than January

9    22, 2010, that an arbitral award was about to be issued on Plaintiffs' claim for unpaid bills,

10   because Tranax received notice on that date that the award had been submitted to the ICDR for

11   review.

12   30.    One week later, on January 29, 2010, Tranax announced that it would stop selling

13   ATMs in its own name and that its products "will be marketed through the parent company,

14   Hantle USA."  Tranax titled this announcement, "A rose by any other name…," implying that

15   even though the name would change from Tranax to Hantle USA, that would be all that changed;

16   the "rose" (*i.e.*, Tranax's ATM business) would remain the same.  Tranax also announced that

17   even though its products would now be sold by Hantle instead of by Tranax, "the product line, the

18   pricing, and the personnel all remain in place to serve you as we have in the past."

19   31.    A few days later, Hantle confirmed that it was taking over Tranax's ATM business,

20   revising its website (www.hantle.com) to echo Tranax's recent announcement.  Hantle's new

21   website displayed a photo of a Tranax ATM next to the headings "A Rose by any other name,"

22   "New name," "Same faces," and "Same Established Product Line."  Moreover, Hantle's new

23   website included menus for "Retail ATM Products" and other products that were very similar to

24   those on Tranax's website.

25   32.    In response to concerns that Plaintiffs raised in the arbitration, Tranax admitted that

26   Tranax had "discontinued its ATM business," that Hantle was now purchasing from Tranax's

27   former supplier the same ATMs that Tranax had previously sold, and that Hantle was now selling

28   those ATMs to Tranax's former customers.  Tranax also admitted that a number of its employees

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA

1 were now working for Hantle. Tranax also represented that there was "no business transfer

2 agreement" between Tranax and Hantle, implying that Tranax did not receive any compensation

3 from Hantle for transferring its customers, supplier relationships, product line, and employees to

4 Hantle.

5 33. Tranax initially represented in the arbitration that it had not transferred any

6 physical assets or inventory to Hantle. However, Tranax later admitted that it had transferred

7 computer and office equipment to Hantle, and that it might continue to transfer additional

8 equipment to Hantle. Tranax stated that some payment was expected, but admitted that no invoice

9 had yet been prepared. Tranax admitted that it was "exiting the retail ATM business," and that

10 "Hantle USA, which is entering the retail ATM business, is buying the same products from the

11 same supplier." Tranax also stated that it had "sold its inventory to its manufacturer's U.S.

12 affiliate." On information and belief, this was a reference to Tranax's purported sale of its

13 inventory to Genmega, which was actually intended for sale by Hantle, as described below.

14 34. On information and belief, Tranax transferred its key product line, intellectual

15 property and know-how, customers, supplier relationships, customer lists and accounts, and other

16 related assets and goodwill to Hantle in or about February 2010, without receiving reasonably

17 equivalent compensation and for the purpose of preventing Plaintiffs from attaching those assets.

18 Tranax also transferred many of its key employees to Hantle, including employees based in

19 Tranax's secondary office in Texas, which was where the sales unit, a key part of Tranax's

20 business, was based. The Texas office is now being used by Hantle. In addition, Tranax

21 transferred certain office equipment, computers, records, and supplies to Hantle, which included

22 valuable information and know-how related to Tranax's business.

23 35. On information and belief, Tranax and Hantle took specific steps to transfer

24 Tranax's customers and related goodwill to Hantle. In addition to the public announcements

25 described above, the Tranax website, through which Tranax had received most of its orders, was

26 redesigned in or about February 2010 so that customers who sought to use the website to order

27 products from Tranax were automatically redirected to a website that was operated by Hantle.

28 Hantle then shipped products and received payment for such orders, even though the customers

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA

9

1    had attempted to place the orders through the Tranax website.  Customers who contacted Tranax

2    were also directed to Hantle.  As a result, Hantle began acting as the successor-in-interest to

3    Tranax's ATM business, by using Tranax's goodwill and established relationships with customers

4    and suppliers to sell Tranax's established product line (including its best-selling MB-1700 retail

5    ATM) to the same customers, using the same supplier and many of the same employees.

6          36.     On information and belief, Genmega participated in and assisted with the

7    dissipation and fraudulent transfer of Tranax's assets by receiving assets from Tranax without

8    providing reasonably equivalent compensation.  For example, in early 2010, Tranax agreed to pay

9    $540,000 to Genmega (in the form of an offset of money Genmega owed for its purchase of ATM

10   products), in exchange for Genmega's agreement to provide warranty services to Tranax's

11   customers that were worth far less than that amount.

12         37.     On information and belief, Tranax also transferred certain servers to Genmega,

13   which included valuable information and know-how related to Tranax's business.  Genmega did

14   not pay reasonably equivalent consideration for the valuable information contained thereon.

15         38.     On information and belief, Hantle and Genmega are located in the same facility

16   with adjoining offices and have shared information about Tranax's ATM Business, which they

17   have received as a result of Tranax's transfer of computers, servers, records, other materials, and

18   employees to them.

19         39.     On information and belief, Tranax decided to exit the retail ATM business and to

20   sell its excess inventory of about $3.2 million in ATM inventory to Genmega at Tranax's "landed

21   cost," without any profit margin to Tranax in late 2009 or early 2010. This decision is reflected in

22   a resolution of Tranax's Board, signed by Defendants Lee and Suh, which is dated December 20,

23   2009.  Tranax's agreement to sell its inventory to Genmega at Tranax's landed cost deprived

24   Tranax of the profits that Tranax could and should have received in normal arms-length

25   transactions with customers.  Moreover, Tranax's records indicate that it actually sold much of its

26   inventory to Genmega at a price that was *below* Tranax's cost, and that Tranax did not receive full

27   payment for that inventory.

28

1    40.    On information and belief, Genmega assisted with the fraudulent transfer scheme

2    by serving as a conduit for Tranax inventory that Hantle sold to Tranax's customers.  For

3    example, much or all of the $3.2 million inventory that Genmega agreed to purchase from Tranax

4    was actually transferred to Hantle, which then sold that inventory to Tranax's customers.

5    41.    On information and belief, Tranax and Defendants never intended that Genmega

6    exercise dominion and control over the Tranax inventory that it agreed to purchase from Tranax.

7    In fact, Tranax and Defendants understood and agreed that this inventory would actually be

8    transferred to Hantle for sale to Tranax's customers.  The sale of this inventory to Genmega was a

9    sham transaction intended to hide the fact that the sale was actually for the benefit of Hantle,

10   Tranax's sister company that was becoming the successor to Tranax's ATM business.

11   42.    On information and belief, Genmega assisted with the dissipation and fraudulent

12   transfer of Tranax's assets by selling ATM products to Tranax in late 2009 or early 2010, which

13   Tranax did not need in view of its imminent exit from the retail ATM market.

14   43.    On information and belief, Genmega did not conduct significant genuine business

15   activities in 2009 or most of 2010, but rather engaged only in transactions with related parties, as

16   described above.  Genmega did not even have its own website until June 2010, and only

17   announced that it was selling a retail ATM in late 2010.

18   44.    On information and belief, the retail ATM Genmega started selling in late 2010,

19   the "1900," is based on, and very similar to, the MB-1700 ATM that was previously sold by

20   Tranax and is currently being sold by Hantle.  Hantle had originally planned to sell the 1900 ATM

21   to Tranax's former customers, but later decided to transfer this product to Genmega.

22   45.    On information and belief, Hantle has begun the process of transferring some or all

23   of Tranax's ATM business and customers to Genmega, in a further attempt to prevent Plaintiffs

24   from enforcing their Recognized Claims.  Thus, Genmega may have become or be in the process

25   of becoming a successor-in-interest to some or all of Tranax's ATM business.

26   **C.  The Role of Defendants Lee and Suh in the Fraudulent Scheme**

27   46.    On information and belief, Defendants Lee and Suh—both in their individual

28   capacity and in their capacity as officers, directors, and/or shareholders of Tranax—directed and

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA                                                                                      11

1   controlled the activities of Tranax, Genmega, Hantle, and other related corporations in the

2   implementation of the fraudulent scheme to hinder, delay, and defraud Plaintiffs in the collection

3   of the Recognized Claims.  Defendants Lee and Suh collectively owned a majority of the shares of

4   Eltna, which in turn owned and controlled Hantle and Tranax, at the relevant times.  Eltna also

5   owned a substantial equity stake in Genmega's parent, Hanmega, until around August 2009.

6   Before Tranax filed its bankruptcy petition, Defendants Lee and Suh were Tranax's President and

7   CFO respectively, and members of Tranax's Board of Directors.  They also served, respectively,

8   as the first President and CFO of Hantle.  In addition, Defendant Suh initially served as

9   Genmega's CFO, Secretary, and Registered Agent.  Defendants Lee and/or Suh appeared on all

10  significant correspondence relating to the incorporation and operation of Hantle and Genmega. In

11  fact, Defendants Lee and Suh approved the Tranax Board Resolution that terminated Tranax's

12  retail ATM business and transferred its inventory to Genmega.

13       47.     Defendants Lee and Suh orchestrated the fraudulent dissipation and transfer of

14  Tranax's assets for their own individual advantage.  The scheme was designed to benefit

15  Defendants Lee and Suh by allowing them to continue operating and controlling a profitable ATM

16  business using Tranax's established product line, know-how, goodwill, customer and supplier

17  relationships, and other tangible and intangible assets, despite Plaintiffs' claims against Tranax

18  and Tranax's bankruptcy.  Defendants Lee and Suh thus sought to continue to receive salaries and

19  other benefits from Hantle and related companies, and enhancing the value of their controlling

20  stake in Eltna, the holding company that owns Tranax and Hantle.

21       48.     Defendants Lee and Suh orchestrated the fraudulent dissipation and transfer of

22  Tranax's assets in breach of their fiduciary duty to Plaintiffs and Tranax.  Defendants Lee and Suh

23  caused Tranax to pay almost all of its debts to related companies and other creditors, but to refuse

24  to pay the amounts owed to Plaintiffs.  After diverting Tranax's assets to other corporations they

25  had established, Defendants Lee and Suh caused Tranax to declare bankruptcy.  Thus, when

26  Tranax filed its bankruptcy petition in June 2010, Plaintiffs were by far the largest creditor of

27  Tranax.

28

1

## FIRST CLAIM FOR RELIEF

2 **(For Avoidance and Recovery of Intentional Fraudulent Transfer and Other Relief, Cal.**

3 **Civ. Code § 3439.04(a)(1); Against All Defendants)**

4         49.      Plaintiffs reallege and incorporate herein by reference each and every allegation set

5 forth in paragraphs 1 through 48, inclusive, as set forth above.

6         50.      Plaintiffs are informed and believe, and on that basis allege, that in late 2009 and/or

7 early 2010, Tranax transferred to Hantle and Genmega its assets and business, including its

8 primary product line, intellectual property and know-how, supplier relationships, employees,

9 customers, customer lists and accounts, and other related assets and goodwill, as well as its

10 inventory of ATM products (collectively, Tranax's "ATM Business").

11         51.      Plaintiffs are informed and believe, and on that basis allege, that the

12 abovementioned transfer of assets was done in anticipation of a possible adverse ruling in the

13 Arbitration as part of a fraudulent scheme whereby Tranax transferred its ATM Business to

14 related corporations so that the assets would be out of Plaintiffs' reach and discontinued its

15 business and income-producing activities that might have helped to satisfy Plaintiffs' Recognized

16 Claims.

17         52.      Plaintiffs are informed and believe, and on that basis allege, that Tranax transferred

18 its assets to Hantle and Genmega with the intent to hinder, delay or defraud Plaintiffs in

19 collecting, and to prevent Plaintiffs from recovering from Tranax on, the amounts due on the

20 Recognized Claims.

21         53.      Plaintiffs are informed and believe, and on that basis allege, that Defendants Hantle

22 and Genmega transferred assets obtained from Tranax to each other with the intent to hinder,

23 delay or defraud Plaintiffs in collecting, and to prevent Plaintiffs from recovering from Tranax on,

24 the amounts due on the Recognized Claims. In so acting, Hantle and Genmega were attempting to

25 enrich themselves at Plaintiffs' expense. Indeed, Hantle sought to make profits by conducting the

26 same ATM business that Tranax had previously conducted, in competition with Plaintiffs, while

27 simultaneously shielding itself from liability for payment of Plaintiffs' Recognized Claims.

28

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA

13

1   Genmega is also seeking to make profits by selling ATMs (*e.g*, the "G1900" model) based on the

2   Tranax MB-1700 to Tranax's former customers.

3       54.    Plaintiffs are informed and believe, and on that basis allege, that Defendants Suh

4   and Lee directed and controlled the fraudulent scheme with the intent to hinder, delay or defraud

5   Plaintiffs in collecting, and to prevent Plaintiffs from recovering from Tranax on, the amounts due

6   on Plaintiffs' Recognized Claims.

7       55.    Defendants were aware of Tranax's and of each other's intention to hinder, delay

8   and defraud Plaintiffs in collection of the Recognized Claims.  Defendants willingly conspired

9   with and aided and abetted Tranax and each other in hindering, delaying, and defrauding

10   Plaintiffs.

11       56.    Tranax and Defendants acted with fraud, oppression and malice as to Plaintiffs.

12       57.    Plaintiffs have been damaged thereby in being unable to recover on the Recognized

13   Claims from Tranax and having to incur costs and expense in seeking relief in this action.

14       58.    The transfer of the ATM Business and other assets was fraudulent as to Plaintiffs

15   under California Civil Code Section 3439.04(a)(1).

16   **SECOND CLAIM FOR RELIEF**

17   **(For Avoidance and Recovery of Transfer Fraudulent as to Plaintiffs and Other Relief, Cal.**

18   **Civ. Code §§ 3439.04(a)(2), 3439.05; Against All Defendants)**

19       59.    Plaintiffs reallege and incorporate herein by reference each and every allegation set

20   forth in paragraphs 1 through 58, inclusive, as set forth above.

21       60.    Plaintiffs are informed and believe, and on that basis allege, that Tranax was

22   insolvent when Tranax transferred the ATM Business to Defendants Hantle and Genmega, or was

23   rendered insolvent by the transfer.  Alternatively, Plaintiffs are informed and believe, and on that

24   basis allege, that, at the time that Defendants Lee and Suh caused Tranax to transfer the ATM

25   Business and other assets to Defendants, Tranax: (a) was engaged or was about to engage in a

26   business or transaction for which its remaining assets were unreasonably small in relation to the

27   business or transaction; or (b) intended to incur, or reasonably should have believed that it would

28   incur debts beyond its ability to pay as they came due.

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA

14

1    61.    Plaintiffs are informed and believe, and on that basis allege, that Tranax did not

2    receive reasonably equivalent consideration for the transfer of the ATM Business to Defendants

3    Hantle and Genmega.

4    62.    The transfer of the ATM Business from Tranax to Hantle and Genmega was

5    fraudulent as to Plaintiffs pursuant to California Civil Code sections 3439.04(a)(2) and 3439.05.

6    **THIRD CLAIM FOR RELIEF**

7    **(For Common Law Fraudulent Conveyance;**

8    **Against All Defendants)**

9    63.    Plaintiffs reallege and incorporate herein by reference each and every allegation set

10   forth in paragraphs 1 through 62, inclusive, as set forth above.

11   64.    Defendants are liable for common law fraudulent conveyance as to Plaintiffs by

12   deliberately participating in a scheme to transfer the ATM Business to Hantle so that it can make

13   profits from conducting the ATM Business, while simultaneously shielding Hantle from liability

14   for Tranax's debts, and preventing Plaintiffs from enforcing the Recognized Claims against

15   Tranax by dissipating Tranax's assets and depriving Tranax of its primary source of revenues.

16   Defendants have also committed common law fraudulent conveyance by using Tranax's goodwill,

17   product line, and established customer and supplier relationships to enable Genmega and/or

18   Hantle to seek to make profits by selling a successor to a Tranax ATM to Tranax's former

19   customers.

20   65.    Plaintiffs have suffered damages and are likely to suffer additional damages

21   resulting from Defendants' conduct.  Plaintiffs are being hindered in recovering, or are unable to

22   recover on, the Partial Arbitral Award and the Recognized Claims, and are thereby incurring,

23   among other things, the loss of use of funds they could otherwise recover, along with fees, costs

24   and other expenses in order to redress Genmega and Hantle's conduct.  At the same time,

25   Defendants seek to be unjustly enriched by making profits by operating the ATM Business in

26   competition with Plaintiffs, while attempting to avoid liability for the debts associated with the

27   ATM Business.

28   66.    Defendants acted with fraud, malice and oppression as to Plaintiffs.

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA

15

1

## FOURTH CLAIM FOR RELIEF

2

### (For Civil Conspiracy Against All Defendants)

3        67.      Plaintiffs reallege and incorporate herein by reference each and every allegation set

4  forth in paragraphs 1 through 66, inclusive, as set forth above.

5        68.      In transferring the ATM Business with intent to defraud Plaintiffs, Defendants and

6  Tranax agreed, and knowingly and willingly conspired, to hinder, delay, and defraud Plaintiffs in

7  the collection of the Recognized Claims.

8        69.      Under this conspiracy, Defendants and Tranax agreed that Defendants Hantle and

9  Genmega would receive the transfer of Tranax's assets, without paying adequate consideration, in

10  order to assure that Tranax's assets were out of Plaintiffs' reach.

11       70.      Defendants did the acts and things herein alleged pursuant to, and in furtherance of,

12  the conspiracy and agreement alleged above.

13       71.      Defendants knew at all times of Plaintiffs' claims against Tranax, that the

14  transferred assets were needed to satisfy Plaintiffs' claims, and that the transferor sought to injure

15  Plaintiffs by hindering or delaying Plaintiffs' recovery of the Recognized Claims.

16       72.      Defendants' conduct of participating in the fraudulent scheme was independently

17  tortious and constituted a breach of duty to not engage in fraudulent transfers or to intentionally

18  defraud Plaintiffs.

19       73.      The diversion and dissipation of Tranax's assets that might otherwise have been

20  used to pay Plaintiffs' claims was independently tortious and constituted a breach of Defendant

21  Lee's and Defendant Suh's duty to Plaintiffs as creditors.

22       74.      Defendants Lee and Suh directly ordered, authorized, and participated in this

23  conspiracy for their own individual advantage, as controlling shareholders of the holding company

24  that owns Tranax and Hantle, as well as officers of Tranax and Hantle that receive benefits from

25  the continued operation of the ATM Business by Hantle and/or Genmega.

26       75.      Plaintiffs have suffered damages and are likely to suffer additional damages

27  resulting from Defendants' conduct.  Plaintiffs are being hindered in recovering, or are unable to

28  recover on, the Partial Arbitral Award and are thereby incurring, among other things, the loss of

SECOND AMENDED COMPLAINT
Case No. CV-10-2160-SBA

16

1   use of funds they could otherwise recover, along with fees, costs and other expenses in order to

2   redress Defendants' conduct.

3         76.     Defendants acted with fraud, malice and oppression as to Plaintiffs.

4                               **FIFTH CLAIM FOR RELIEF**

5                         **(For Aiding and Abetting Against All Defendants)**

6         77.     Plaintiffs reallege and incorporate herein by reference each and every allegation set

7   forth in paragraphs 1 through 76, inclusive, as set forth above.

8         78.     In participating in and assisting with the transfer of the ATM Business, Defendants

9   provided substantial assistance to Tranax and to each other in the fraudulent and unlawful scheme

10  to hinder, delay and defraud Plaintiffs.

11        79.     Defendants knew at all times of Plaintiffs' claims against Tranax, that the

12  transferred assets were needed to satisfy Plaintiffs' claims, and that the transferor sought to hinder

13  or delay Plaintiffs' recovery of the Recognized Claims.

14        80.     Defendants knew that the fraudulent scheme to hinder and delay Plaintiffs'

15  collection of the Recognized Claims was unlawful and constituted a breach of Tranax's duty to

16  not intentionally defraud Plaintiffs.

17        81.     Defendants' participation in the fraudulent scheme was independently tortious and

18  constituted a breach of duty to not engage in fraudulent transfers or to intentionally defraud

19  Plaintiffs, and Defendants knew that each other's conduct constituted a breach of duty to

20  Plaintiffs.

21        82.     The diversion and dissipation of Tranax's assets that might otherwise have been

22  used to pay Plaintiffs' claims was independently tortious and constituted a breach of Defendant

23  Lee's and Defendant Suh's duty to Plaintiffs as creditors.

24        83.     Defendants Lee and Suh directly ordered, authorized, and participated in this

25  fraudulent scheme for their own individual advantage, as controlling shareholders of the holding

26  company that owns Tranax and Hantle, as well as officers of Tranax and Hantle that receive

27  benefits from the continued operation of the ATM Business by Hantle and/or Genmega.

28

**SECOND AMENDED COMPLAINT**
Case No. CV-10-2160-SBA                                                          17

1    84.    Plaintiffs have suffered damages and are likely to suffer additional damages

2    resulting from Defendants' conduct.  Plaintiffs are being hindered in recovering, or are unable to

3    recover on, the Partial Arbitral Award and are thereby incurring, among other things, the loss of

4    use of funds they could otherwise recover, along with fees, costs and other expenses in order to

5    redress Defendants' conduct.

6    85.    Defendants acted with fraud, malice and oppression as to Plaintiffs.

7    **PRAYER**

8    WHEREFORE, Plaintiffs pray for relief as follows:

9    A.  For money damages in the amount necessary to satisfy the Recognized Claims.

10   B.  For the establishment of a constructive trust on the assets that were the subject of the

11   Transfers and on all the proceeds and products thereof.

12   C.  For an accounting.

13   D.  For punitive and exemplary damages.

14   E.  For fees and costs incurred herein.

15   F.  For such other and further relief as may be just and proper, including such relief as

16   may be available under or permitted by California Civil Code sections 3439.07 and 3439.10, or

17   any other applicable law.

18
19   Dated: March 21, 2011          ADAM A. LEWIS
                                     GRANT L. KIM
                                     ALISON M. TUCHER
20                                   BARBARA N. BARATH
                                     MORRISON & FOERSTER LLP
21

22

23   By:   /s/ Grant L. Kim
                Grant L. Kim

24                                   Attorneys for Plaintiffs

25

26

27

28

SECOND AMENDED COMPLAINT                                                          18
Case No. CV-10-2160-SBA
sf-2942360